IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

      Plaintiff,

v.

$30,000.00 IN UNITED STATES CURRENCY,
54.4 KILOGRAMS OF KETAMINE,
2,073 GRAMS OF SILDENAFIL CITRATE,

      Defendants.

_____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***
_____

COMES NOW the United States of America, by and through United States Attorney John F. Walsh and Assistant United States Attorney Martha A. Paluch, pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (G)(2), states:

## JURISDICTION AND VENUE

1.    The United States of America (the United States) has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(C), seeking forfeiture of the defendant property constituting, derived from and or traceable to proceeds in violation of 18 U.S.C. § 545 (relating to the importation of goods into the United States contrary to law). This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2.    Venue is proper under 21 U.S.C. § 881(j), 19 U.S.C. § 1605 and 28 U.S.C. § 1395, as the defendant property is currently located, and some of the acts described herein occurred, in the District of Colorado.

## DEFENDANT PROPERTY

3. Defendant property is described as:

a. $30,000.00 in United States Currency currently in the possession of B&B Pharmaceuticals (Defendant "B&B Funds").  Pursuant to an agreement between B&B Pharmaceuticals and the United States, defendant B&B Funds will be turned over to the United States upon execution of a Warrant for Arrest of Property *In Rem*.

b. 54.4 kilograms of Ketamine seized on July 31, 2006, from B&B Pharmaceuticals pursuant to District of Colorado Criminal Search and Seizure Warrant No. 1:06-sw-05122-CBS-1 ("defendant Ketamine").  Defendant Ketamine is currently being held by the Department of Homeland Security / Immigration and Customs Enforcement.

c. 2,073 grams of Sildenafil Citrate seized on June 20, 2006, from B&B Pharmaceuticals pursuant to District of Colorado Criminal Search and Seizure Warrant No. 1:06-sw-05122-CBS-1 ("defendant Sildenafil Citrate").  Defendant Sildenafil Citrate is currently being held by the Department of Homeland Security / Immigration and Customs Enforcement.

4. Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement agents and officers as reported to me:

## 1. INTRODUCTION

5. The United States Food and Drug Administration (FDA) is the federal agency responsible for protecting the health and safety of the American public by ensuring, among other things, that drugs are safe and effective for their intended uses before they may be held and offered for sale to the people of this country.

6. The Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Office of Investigations is the federal agency charged with defending this country's homeland by investigating criminal activity relating to both Immigration and Customs violations, which includes violations related to intellectual property rights.

7. Safety and efficacy of drugs administered to citizens of this country depend, in part, on maintaining the integrity of the pharmaceutical manufacturing and distribution system.

## 2. RELEVANT LAW

8. Under the Food, Drug and Cosmetic Act (FDCA), drugs are defined as, among other things, "articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man.…" (21 U.S.C. § 321(g)(1)(B); articles "intended to affect the structure or any function of the body of man.…" (21 U.S.C. § 321(g)(1)(C); or articles intended for use as components of other drugs (21 U.S.C. § 321(g)(1)(D).

9. The introduction and/or causing the introduction into interstate commerce of bulk ingredients for use in veterinary or pharmacy compounding of animal drugs causes these items to be deemed as misbranded drugs and, by itself, is a prohibited act pursuant to 21 U.S.C. § 331, unless there is an applicable exemption. A drug is also considered to be misbranded "unless its labeling bears . . . adequate directions for use." 21 U.S.C. § 352(f)(1), *Algon Chemical Inc.*, 879 F.2d 1154, 1156 (3d. Cir. 1989); *9/1 Kg Containers*, 854 F. 2d 173, 175 (7th Cir. 1988). The requirement that drugs bear adequate directions for use applies to both bulk drugs and the finished drugs themselves. To bear adequate directions for use, the directions in the labeling of the drug must be adequate for a layperson to use the drug. There are certain exemptions to 21 U.S.C. § 352(f)(1), however, these exemptions do not exempt the distribution of bulk drugs to veterinarians and pharmacists for compounding. 21 C.F.R. § 530.13.

10. Violations of 21 U.S.C. § 331 carry the possible penalty of one year imprisonment, a fine, or both. If done with the intent to defraud or mislead anyone, including a government agency, violations carry a possible penalty of three years imprisonment, a fine, or both. 21 U.S.C. §§ 331, 333(a)(1)(2).

11. Title 19 U.S.C. § 1337(d)(2) states that the authority of the International Trade Commission to order an exclusion from entry of articles shall be limited to persons determined by the Commission to be violating this section unless the Commission determines that (A) "a general exclusion from entry of articles is necessary to prevent circumvention of an exclusion order limited to products of named persons; or (B) there is a pattern of violation of this section and it is difficult to identify the source of infringing products."

12. Title 18 U.S.C. § 545 states that "whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law shall be fined under this title or imprisoned not more than twenty years, or both."

### 3. BACKGROUND re: B&B PHARMACEUTICALS

13. Publicly available records show that B&B Pharmaceuticals was incorporated in the State of Colorado on or about January 1, 1997. The company's principal place of business is located at 17200 East Ohio Drive, Aurora, Colorado 80017. The registered agent of the corporation is identified as Bonnie Bradley Dassinger.

14. B&B Pharmaceuticals is a pharmaceutical wholesaler and "repacker" that advertises and lists products on their company website, (www.bandbpharmaceuticals.com). The website itself is tailored to the product needs of compounding pharmacies. The site was

designed to allow B&B Pharmaceuticals' customers to view the available products for sale, and then make purchases using a toll-free number.  The website advertised the sale of numerous Class II, III, and IV Controlled Substances, as well as various other chemicals.  Several of the chemicals that were offered for sale were patented Active Pharmaceutical Ingredients (APIs), to include Sildenafil Citrate.   B&B Pharmaceuticals shipped the product orders through the use of a commercial carrier which often travelled in interstate commerce.

15. A review of FDA registration information indicates that B&B Pharmaceuticals filed a Registration of Drug Establishment with the FDA on or about January 20, 2004, listing B&B Pharmaceuticals as a "repacker" of bulk drugs.

16. Publicly available records show that B&B Pharmaceuticals is registered with the Colorado Department of Regulatory Agencies, Divisions of Registrations as a drug company.  The records indicate that B&B Pharmaceuticals has been registered since February 27, 1997.

### 4. BACKGROUND: KETAMINE AND SILDENAFIL CITRATE

17. Ketamine, a scheduled III controlled substance, is an anesthetic that is abused for its hallucinogenic properties.  Ketamine is also referred to as, and/or consists of, Ketamine Hydrochloride, Ketaset, and Ketalar.  Its predominant legitimate use is as a veterinary anesthetic.  Abuse of the drug gained popularity when users discovered that it produced effects similar to those associated with phencyclidine (PCP).

18. Sildenafil Citrate is the API contained in Viagra®.  Viagra® is the registered trademark of Pfizer, and is an FDA approved prescription drug used in the treatment of erectile dysfunction.

## 5. EXCLUSION ORDER

19. In 2004, the International Trade Commission (ITC) issued an order to stop the importation of unlicensed Viagra imitations, after Pfizer brought a complaint against fifteen (15) companies that were importing forms of Viagra (Sildenafil Citrate) that infringed its patent. In its decision, the ITC issued a general exclusion of such importation. The Commission found that the general exclusion was necessary because of the difficulty in identifying the source of the infringing products and because of the ease with which sellers can mask or change their identity by operating over the Internet.

20. This General Exclusion Order (often referred to as a "337 Exclusion Order" because it is premised upon 19 U.S.C. § 1337), is a broad remedy issued by the ITC that is directed to any article that infringes the patents-in-suit, rather than just those of the named respondents. Therefore, the exclusion applies to parties that were not part of the ITC proceedings.

## 6. INVESTIGATIVE ACTIVITIES

### A. INITIAL ALLEGATION/PRELIMINARY RECORD REVIEW

21. On or around September 12, 2005, Robert F. Monteiro, an individual who was employed with the Corporate Security Section for Pfizer, Inc., provided information to officials working with DHS/ICE regarding allegations involving the importation, sale and distribution of Sildenafil Citrate. Specifically, Robert Monteiro claimed that B&B Pharmaceuticals was illegally importing, packaging, marketing and distributing Sildenafil Citrate to pharmacies located in the United States. This information was ultimately provided to DHS/ICE SA Jason Cassidy, who, in turn provided it to FDA/OCI SA Russell Hermann.

22. On or about December 6, 2005, agents reviewed evidence provided by Pfizer that included two undercover purchases made in 2005. On those dates Pfizer contracted a private investigative firm to conduct undercover on-line purchases from B&B Pharmaceuticals of the following four compounds (all compounds are APIs patented by Pfizer); Sildenafil Citrate (used in Viagra), Gabapentin (used in Neurontin), Fluconazole (used in Diflucan), and Azithromycin Dihydrate (used in Zithromax). Upon receipt of the shipments from B&B Pharmaceuticals, all four compounds were tested by Global Quality Analytical Recourses, in the Special Testing and Analytical Development Laboratory, located at Pfizer Inc., in Groton, Connecticut. All four compounds tested positive for their listed ingredients. Lab results also verified that these APIs were produced by an unknown source (not Pfizer) believed to be in China or India. Subsequent checks revealed that B&B Pharmaceuticals does the majority of their importing from a company by the name of Goto Chemical, located in Xiangfan, China.

23. On or about December 15, 2005, agents obtained and reviewed a copy of the patent paperwork, provided by Robert F. Monteiro, Corporate Security for Pfizer, Inc. The certificate, titled United States Patent and Trademark Office – Certificate Extending Patent Term, provided, in part, the following:

PATENT NO.:      5,250,534

ISSUED:          October 15, 1993

INVENTOR:        Andrew S. Bell, et al.

PATENT OWNER:    Pfizer Inc.

PRODUCT:         Viagra® (Sildenafil Citrate)

24. The U.S. Patent Certificate indicated that an application under 35 U.S.C. § 156 had been filed and approved to extend the term of U.S. Patent No. 5,250,534 beyond its original expiration date of June 18, 2011, for 283 more days.

7

25.     On or about January 17, 2006, FDA Consumer Safety Officer, Regina Barrell, provided records and documents related to an FDA on-site inspection of B&B Pharmaceuticals that occurred in late 2004, in which numerous and varying quantities of the API Sildenafil Citrate were located.  A review of the documents, which included copies of the bulk raw ingredient labels for Sildenafil Citrate, copies of photographs of bottles containing and/or labeled Sildenafil Citrate, Master Repackaging Records pertaining to Sildenafil Citrate, revealed that the manufacturers which produced the Sildenafil Citrate purchased by B&B Pharmaceuticals were identified as Sal Pharma Pvt. Ltd., 1-7-176, Bakaram, India; and Shenyang Shenjia Science & Technology, Inc., No. 117 Nanta Street, Dongling District, Shenyang, Laoning Province, China.

26.     On or about April 13, 2006, Immigration and Customs Enforcement (ICE) Special Agent (SA) Jason Cassidy received and reviewed records which indicated that B&B Pharmaceuticals imported 5 Kilograms of Sildenafil Citrate into the United States from Xiangfan Goto Chemical Co., Ltd., which was ultimately shipped to B&B Pharmaceuticals at 17200 East Ohio Dr., Aurora, Colorado 80017.

27.     During a review of records and after communicating with individuals from FDA's regulatory section, agents discovered that B&B Pharmaceuticals had imported commercial quantities of Ketamine which were sold, in part, to veterinary compounding pharmacies in violation of the Food, Drug and Cosmetic Act.  In mid 2006, agents also discovered from FDA regulators that B&B Pharmaceuticals was actively importing approximately (50) kilograms of Ketamine from China into the United States.  In connection with the importation process, representatives from B&B Pharmaceuticals advised the FDA that the Ketamine product would be used strictly for human use.  In connection with this importation, representatives from B&B Pharmaceuticals provided a sample list of intended customers or customers who had previously

purchased Ketamine from B&B Pharmaceuticals, and it was determined that one or more of these customers primarily engaged in veterinary compounding practices, which is illegal under the regulations described above.

## B. SEIZURE AND ANALYSIS OF DRUGS

28. On or about June 20, 2006, agents from both ICE and FDA/OCI executed a search warrant (District of Colorado Criminal Search and Seizure Warrant No. 1:06-sw-05122-CBS-1) at B&B Pharmaceuticals.  During the execution of this search warrant agents seized defendant Sildenafil Citrate, along with documents containing information regarding the importation and subsequent sale of the API Sildenafil Citrate.

29. On or about July 31, 2006, agents from both ICE and FDA/OCI executed a search warrant (District of Colorado Criminal Search and Seizure Warrant No. 1:06-sw-05122-CBS-1) at B&B Pharmaceuticals.  During the execution of this search warrant agents seized defendant Ketamine, along with documents containing information regarding the importation and subsequent sale of the Ketamine.

30. ICE SA Jason Cassidy subsequently sent the seized substances purporting to be Sildenafil Citrate and Ketamine to the DEA Western Laboratory in San Francisco, CA.  The results of the analysis revealed that the substances purporting to be Sildenafil Citrate and Ketamine tested positive as Sildenafil Citrate and Ketamine.

## C. SEIZURE AND ANALYSIS OF DOCUMENTS

### i. KETAMINE

31. A review of the records seized from B&B Pharmaceuticals along with documents obtained from various government regulatory agencies indicated that B&B Pharmaceuticals

imported at least fifty (50) kilograms of Ketamine HCL from a broker identified as BTX Global Pharmaceuticals, Inc., on or about December 21, 2005.

32. Records also indicated that B&B Pharmaceuticals received twenty-five (25) kilograms of Ketamine from CU Chemie Uetikon GnbH Raiffeisenstrabe 4 D-77933, Lahr, Germany on or about February 24, 2006.

33. As previously stated, Bonnie Dassinger routinely filed supporting documentation on behalf of B&B Pharmaceuticals including letters indicating that the APIs and controlled substances that they were importing from overseas in connection with the claimed exemption from the labeling requirements as referenced in the Food, Drug and Cosmetic Act were to be used in the course of pharmacy compounding for "Human Use."  Specifically one letter, dated March 29, 2006, was authored by Bonnie Dassinger, which indicated that the 50 kilograms of Ketamine HCL was to be used for pharmacy compounding for human use.  As further explained in Section "D" titled "Interviews," agents learned from Robert Gertie that B&B Pharmaceuticals often and routinely sold Ketamine that claimed to have been imported into the United States for "Human Use" to entities that were known to use the API Ketamine for veterinary compounding purposes.  Furthermore, as previously stated in paragraph 27, when representatives from B&B Pharmaceuticals were questioned by FDA Regulatory Officials in regards to this specific importation of Ketamine, B&B Pharmaceuticals provided a list of their customers who purchased Ketamine, one of them identified by an FDA Regulatory Official as a veterinary compounding pharmacy.

34. From a review of the records, agents discovered that Congaree Veterinary Pharmacy, located in Cayce, South Carolina, had purchased approximately one (1) kilogram of Ketamine from B&B Pharmaceuticals in or around January of 2006.  As further explained in

10

Section "D" titled "Interviews," the owner of this pharmacy stated that he purchased the Ketamine from B&B Pharmaceuticals for veterinary compounding purposes.

### ii. SILDENAFIL CITRATE

35. A review of the records also indicated that from on or about June of 2005 and continuing through at least April of 2006, B&B Pharmaceuticals did import and cause the importation into the United States of at least eighteen (18) kilograms of Sildenafil Citrate in connection with at least four (4) separate transactions.

36. Agents determined from a review of the documents that were seized that B&B Pharmaceuticals illegally shipped on numerous occasions the imported Sildenafil Citrate to compounding pharmacies located throughout the United States. As an example, one of the many transactions of this type included a sale that took place on or about July 13, 2005, in which 25 grams of Sildenafil Citrate was distributed by B&B Pharmaceuticals to Partell Medical Pharmacy, located in Las Vegas, Nevada. Another transaction took place on or about September 28, 2005, involving the sale of 25 grams of Sildenafil Citrate by B&B Pharmaceuticals to Kronos Compounding Pharmacy, located in Las Vegas, Nevada.

37. Agents determined through a review of the records seized from B&B Pharmaceuticals that B&B Pharmaceuticals received more than $95,500.00 as a result of illegal sales of varying quantities of the Sildenafil Citrate made to compounding pharmacies located throughout the United States from June 22, 2005 to June 19, 2006.

### D. INTERVIEWS

38. On June 20, 2006, Bonnie Dassinger was interviewed by agents regarding her knowledge of alleged violations in relation to B&B Pharmaceuticals. She advised that she was the president of B&B Pharmaceuticals and that she had operated B&B Pharmaceuticals since

11

1997.  She stated that B&B Pharmaceuticals had ordered the API Sildenafil Citrate from Xiangfan Goto Chemical Co., Ltd.,  located at 28# Chunyuan Road, Xiangfan City, Hubei, China, 441003.  She indicated that B&B Pharmaceuticals had been ordering Sildenafil Citrate directly from Xiangfan Goto Chemical Ltd. for about one year.  She believed that they had paid approximately $230.00 for each kilogram of Sildenafil Citrate that they had purchased from their sources.  After being advised by agents of the existence of an exclusion order involving the API Sildenafil Citrate, filed by the ITC in 2004, Bonnie Dassinger acknowledged that importing the API Sildenafil Citrate into the United States, or causing the importation of Sildenafil Citrate into the United States, or selling Sildenafil Citrate, knowing that it was illegally imported into the United States, was a violation of federal law.

       39.      Bonnie Dassinger also stated that B&B Pharmaceuticals routinely sold Ketamine to licensed compounding pharmacies.  She paid approximately $220.00 for each kilogram of Ketamine that they had purchased from their sources.  At the time of the interview, she indicated that they had been ordering Ketamine from two different sources.  The ordered Ketamine would typically be shipped into the United States from other countries.

       40.      On June 20, 2006, former B&B Pharmaceuticals employee Robert Gertie, was interviewed by agents regarding his knowledge of alleged violations in relation to B&B Pharmaceuticals.  While employed with B&B Pharmaceuticals, he indicated that he was responsible for submitting a proposal to Bonnie Dassinger that supported the need to include Sildenafil Citrate as a product that B&B Pharmaceuticals should offer for sale.  Gertie advised that up until about 2004, B&B Pharmaceuticals purchased Sildenafil Citrate from R.J. Chemical, which was located in the New Jersey area.  In connection with Gertie's proposal, B&B Pharmaceuticals Inc. started to illegally import Sildenafil Citrate directly from Xiangfan Goto

Chemicals.  Gertie indicated that one of B&B Pharmaceuticals' customers was a pharmacy located in the Parker, Colorado area.  According to Gertie, the owner of this pharmacy would purchase commercial quantities of the API Sildenafil Citrate that was obtained by B&B Pharmaceuticals from their source in China.  Gertie further explained that the owner of this pharmacy would make unapproved drugs using the purchased Sildenafil Citrate, which he further described as rapidly dissolving Sildenafil Citrate.  According to Gertie, the owner of this pharmacy would make this product, which Gertie identified as 50 mg troches (lozenges), by taking actual Viagra tablets, crushing them up and adding Sildenafil Citrate powder to the crushed up Viagra tablets.  Gertie further explained that the owner of this pharmacy had illegally made and distributed large quantities of the 50 mg troches to customers throughout the United States for the treatment of erectile dysfunction.

41. During the same interview, Robert Gertie stated that B&B Pharmaceuticals routinely sold Ketamine obtained as bulk product from their sources located in China, to pharmacies whose main business was to compound drugs for veterinary use.  Robert Gertie admitted that he knew this violated federal law and advised the agents that Bonnie Dassinger was aware of and approved of these transactions, knowing as well that they violated federal law.

42. On May 17, 2007, ICE SA Cassidy interviewed Terry Fiffick, owner of Congaree Veterinary Pharmacy, located in Cayce, South Carolina.  During the interview, Fiffick advised SA Cassidy that he had purchased Ketamine from B&B Pharmaceuticals; specifically, Fiffick indicated that he received one (1) Kilogram of Ketamine in or around January of 2006.  Fiffick further stated that the Ketamine he purchased from B&B Pharmaceuticals was to be used for compounding veterinary drugs and that he operated a veterinary compounding pharmacy.  The distribution of Ketamine from Aurora, Colorado, the location where B&B Pharmaceuticals

operated, to Congaree Veterinary Pharmacy, located in Cayce, South Carolina, involved the introduction into interstate commerce of this misbranded drug. In this instance, since the Ketamine was intended to be used as a drug it is subject to the regulations and laws listed in the United States Federal Food, Drug and Cosmetic Act. Furthermore, because the Ketamine in this instance was to be used for veterinary compounding purposes, it is not exempted from the regulations and laws listed in the FDCA, specifically the statute dealing with labeling requirements as they pertain to adequate directions for use.

43. In January of 2007, representatives from Partell Medical Pharmacy, in Las Vegas, Nevada, were interviewed by agents and confirmed that they had received the Sildenafil Citrate from B&B Pharmaceuticals which they routinely compounded into trochees and crèmes to treat erectile dysfunction, the same FDA approved use for Viagra©.

44. In January of 2007, representatives from Kronos Pharmacy, in Las Vegas, Nevada, were interviewed by agents and confirmed that they also received and subsequently used the Sildenafil Citrate from B&B Pharmaceuticals which they routinely compounded into trochees to treat erectile dysfunction, the same FDA approved use for Viagra©.

## CASE RESOLUTION

45. In connection with the investigation into the allegations of fraud involving B&B Pharmaceuticals, James Prochnow, attorney representing B&B Pharmaceuticals, and Assistant United States Attorney Jaime Pena, discussed possible resolutions and agreed, as a resolution to the case, that B&B Pharmaceuticals would forfeit a sum of $30,000.00 to the government (defendant $30,000.00 in U.S. Currency), which amount represents proceeds from the illegal sale of Sildenafil Citrate as described above; agree to not contest the seizure and subsequent forfeiture of any and all drugs previously seized/recovered from B&B Pharmaceuticals; and

would institute policies and procedures to ensure future compliance with all Federal laws.  In exchange, the United States agreed it would not pursue criminal charges against B&B Pharmaceuticals for the specific violations described herein.

### VERIFICATION OF RUSSELL HERMAN, SPECIAL AGENT, FOOD AND DRUG ADMINISTRATION

I, Special Agent Russell Hermann, hereby state and aver that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein is true.

    s/ **_Russell Hermann_**
Special Agent, FDA

STATE OF COLORADO            )
                             )ss.
CITY AND COUNTY OF DENVER)

The foregoing VERIFIED COMPLAINT FOR FORFEITURE IN REM was sworn to and subscribed before me this 6th day of May, 2011, by Russell Hermann, Special Agent, United States Food and Drug Administration/Office of Criminal Investigations.

    s/ **_Nicole C. Davidson_**
Notary Public, State of Colorado
*My Commission Expires: June 15, 2014*

### FIRST CLAIM FOR RELIEF

46. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

47. By the foregoing and other acts, defendant B&B Funds constitutes or is derived from proceeds traceable to violations relating to the importation of goods into the United States

15

contrary to law, 18 U.S.C. § 545, and is, therefore, forfeitable pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF

48. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

49. By the foregoing and other acts, defendant Ketamine constitutes goods that were imported into the United States contrary to law, 18 U.S.C. § 545, and is, therefore, forfeitable pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(C).

## THIRD CLAIM FOR RELIEF

50. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

51. By the foregoing and other acts, defendant Sildenafil Citrate constitutes goods that were imported into the United States contrary to law, 18 U.S.C. § 545, and is, therefore, forfeitable pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant properties described herein in favor of the United States, and that the United States be authorized to dispose of the defendant properties in accordance with law; and that the Court enter a finding of probable cause for the forfeiture of the defendant properties.

Respectfully submitted this 6th day of May, 2011.

JOHN F. WALSH
United States Attorney

By: s/ *Martha A. Paluch*
Assistant United States Attorney
1225 17th Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
FAX: (303) 454-0402
E-mail: Martha.Paluch@usdoj.gov